Good afternoon everyone. In our session today there are six cases on the calendar before the panel. Two of those six cases, however, are being submitted on the briefs. I will just note those two cases for the record. The first one is number 06-7204, Kintz v. Department of Veterans Affairs, and the second one is number 06-3317, Moss v. Department of the Navy. Again, those two cases are being submitted on the briefs. The first case in which we'll hear oral argument today is number 06-1091, Quickview System v. Belo Interactive. Mr. Chan, one question. I just want to confirm you've reserved five minutes for your rebuttal? Yes. And you know how the lighting system works and all? Yes. Okay, go ahead whenever you're ready. My name is Alfonso Garcia Chan of the Shore Chan Raglan Law Firm in Dallas, Texas, and I represent the appellate, Quickview Systems Incorporated in its appeal to the U.S. District Court of the Northern District of Texas regarding U.S. reissued patent number 36653 or the 653 patent. There are two issues presented today on appeal. The first issue is whether the indefinite article A in the term A computer means one or more computers or a single computer. The second issue is whether the term lines in describing the location of fields on a display screen means only horizontal lines and excludes vertical lines. And I will turn to the first issue regarding the claim construction of the term A computer. Your Honor, it is Quickview's position that the controlling law on this issue is set forth in KCJ v. Kinetic Concepts, which is cited in our briefs, that the indefinite article A or an in patent parlance carries the meaning of one or more in open-ending claims containing the transitional phrase comprising. Well, you're certainly correct, I think, Mr. Chan, that cases have said that and held that in various settings, but don't you really have to look at each particular patent and specification to determine whether that rule is going to apply? In other words, I guess what I'm saying, I don't think, correct me if you think I'm wrong, I don't think that it's a rule of universal ironclad application. Well, I believe the convention, I actually believe the KCJ opinion recites or characterizes this as the conventional rule, the claim limitation A without more requires at least one. And I guess that's the rub here, is there more set forth in the specification and intrinsic evidence and perhaps further in the extrinsic record. But this accused device uses the internet, right? Yes, the accused instrumentality does use the internet. Right, so if you took this claim 26 and you substituted the word internet for computer, would the claim make any sense? That is, it does utilize the internet in terms of how the computer or a computer is implemented in what QuickView is accusing of infringement, but the claim in and of itself does not cover, per se, the internet. The internet is used just as other types of communication systems and interfacing systems in order to connect or interconnect the different components of the distributed computer system that we believe falls under the scope of claims. Sorry to interrupt, but where in the intrinsic record do you find support for your construction? Well, we believe that first, if one turns to the claim language itself, claim 26, which is the claim at issue, recites the open-ended claim phrase comprising it, and specifically in a process executed in a computer comprising the steps up. Claim 26 isn't specific as to the number of computers. It doesn't recite a single computer or a plurality of computers. It just says executed in a computer. The patentee did not, in the claim language itself, evince a clear intent to limit the term a computer to a single computer. But that's the problem I'm having with the language of the claim. It strikes me this is talking about a situation in which the computer is storing and displaying the data at the same time, and that when the invention is used with the internet, that's not the case, right? The, well, the different functions of, it's our contention, that is Cookview's contention, that the different steps that recited in claims 26 are performed by different parts of a computer that are not part of a single unitary device. Well, this gets back to my question. Where do you find support for that kind of an expansive construction in the written description? Now, clearly, the written description provides a basis for the district court's conclusion that the claim relates to a single computer, whether it be a laptop or a multi-component desktop. Well, Your Honor, I believe there's support for that in the claims as originally filed. The claims as originally filed describe the term computer or a computer using the phrase interactive data entry computer system, which I believe gives support for a broader understanding of the term computer, a computer. Further, in the description of the, in column one. That's a claim that was canceled? Your Honor, that is a claim that was modified on reissue, and I would draw your attention to claim one, actually, in the reissue patent, which appears up here. At column 12, beginning at line 5, there one can see that the term in an interactive data entry computer system is part of the original, as part of the claims as originally issued prior to reissue, and that language also appears in the claims as had been originally filed and prosecuted in the patent office before reissue of the 653 patent. Further, I would draw your attention to column one in the original specification and column two, and in column one, for example, at lines 23 to 25, the specification states, while this invention is addressed to the small portable computers, it is equally applicable to the non-portable or larger size computers. Why does that prove anything? Why does that prove that you're going to have a computer network in this method? Well, Your Honor, it's our position, and it's Quickview's claim construction arguments that were presented to the district court, that the larger size computers at the time of filing the work systems, in fact, it was the exception to have a small portable computer or the laptop or a PC computer, but rather, the computers of that era in the early to mid-1980s tended to be more of a distributed type, and that's the reason why we had cited the IBM Dictionary of Computing definition of a computer to corroborate that, and in there, we took the definition contemporaneous with the filing and the issue of the underlying patent for the 653 patent, and there, the definition was computer. A computer may consist of a standalone unit or may consist of several interconnected units, so it is Quickview's position that the disclosure of larger size computers in the context of the invention, coupled with the standalone units or several interconnected units, would prohibit reading in a limitation where a computer meant a single computer. Is there anything in the written description that discloses or suggests a network or use of this on the internet other than the passage you've just referred to? Your Honor, with respect to your question on the internet, the patent was filed before the internet came into being, but with respect to the transfer of information from, for example, a smaller computer to a large computer, there is disclosure at column 9, lines 60 through 63, which is in the record at 227, and there's a disclosure there where it states, the small microprocessor notepad computer can be loaded from a larger, more permanent installation, and further, the notepad computer can be offloaded to the same larger type of installation. But still, that doesn't talk about a network. I mean, even given your comment about the internet, which I'm not sure is accurate, but just accepting it as valid, nonetheless, there is, I find no discussion whatsoever in the written description that suggests any use of this invention in any context other than the context of a single computer. Well, I understand your issue with regard to the internet in general. There was DARPAnet, I believe, at the time, so that was generally known among academia and the defense department, but with respect to the public at large, the internet was not there. And with respect to the disclosure in the specification, it's our position that the term offloaded, as described in column 9, when you're offloading information from a small microprocessor, that is a notepad sized computer, to a larger type of installation, which would encompass the larger sized computers described in column 1 in the description, that would suggest that there's something broader, there's a further scope that's allotted toward the term a computer. Well, you're reading an awful lot into very little, and the problem is that in light of our the claim broadly, you've got to find some broader support for that in the intrinsic record. And that's the other reason why we also tried to draw the court's attention to the claims themselves, and it's important that you cite and mention Phillips, because in Phillips... Well, you relied on claim 75 in your brief, but that's misquoted in the reply brief, right, on pages 2 and 3. It's just misquoted. It doesn't refer to a single computer. No, it's not misquoted, because we stated that claim 75 recites execution of a single computer program in the computer. Yeah, but when you quote it, you say a single computer. That's not good. You're not supposed to do that. Well, Your Honor, I apologize if there was any confusion about that, but the intent was that we had intended to cite the phrase execution of a single computer program in the computer to indicate that when the patentee intended to require singularity with the term computer, he used the term a single computer. Now, Mr. Wischow, you're into your rebuttal, but we'll restore your full five minutes of time. I think we'll hear from the other side now. Thank you, Your Honor. Thank you. Mr. Boother? Yes.  Yes, Boother. Boother, okay. Yes, yes, Your Honor. Thank you. Eric Boother with Wienberg Trauer for the defendant Bilo Interactive Systems. Bilo is a media company that owns televisions, newspapers, that type of operation. They have a website that displays news information. That's the accused as we count here, but the district court correctly construed the term a computer to mean only one computer, to exclude a network comprised of two or more computers, and that's clear from the claim language itself, which talks about requiring the process to be performed in a computer with a data display screen. Claim 26 also talks about the data display screen. Throughout the claim, it talks about a singular screen encompassed within a singular computer, and Judge Dyck, I think, hit on an important point that the claim also requires the computer not only to have a screen, but also to store the files which are then accessed for the information to display on that screen. So everything about the claim talks about a single computer accessing the files stored in that computer and then displaying it on the screen in that computer. Now, this court has several times said that the Article A suggests a single item. The court did that in the Norian v. Stryker case decided at the time. The word A does not necessarily mean one or more. In fact, it suggests a singular item, but depending upon the context of the claim, it could mean one or more if it's in one of these comprising claims, and I think that's the real argument that they make to try and get around the clear evidence in the specification and the claim language is this rule of construction, this convention, and I believe what the plaintiff is trying to do, or the opponent, is to put blinders on the court, if you will, to ignore the language of the claim in the specification and focus on that rule, but their argument must fail for two important reasons. One is, we contend the rule doesn't even come into play because in every case, the KCJ case and the other cases where the court applied this rule, the language A and then whatever the item was, in this case, came after the comprising transitional phrase, and in this case, the word a process performed in a computer with a display screen comes before the transitional word comprising. Now, the appellant tried to suggest, well, that doesn't matter, but it does, and this court in the vehicular technologies case, 212 F. 3rd 1377, said a drafter uses the term comprising to mean, quote, I claim at least what follows and potentially more, and if you look at every case that applied this KCJ rule, it was where the indefinite article came afterwards, which makes sense because it's what follows is what is open-ended, but not what comes before, but even if that weren't the case, your honor, in this case, that general rule shouldn't apply because the specification is abundantly clear that the claimed invention is directed to a process executed in a single computer, and once again, the Norian case, I think, is on all fours with this situation where it talked about although a word, although the word a generally means one or more in open-ended claims containing the transitional phrase comprising, that general rule does not apply when the specification or the prosecution history shows that the term was used in its singular sense, and that is exactly the case here, that in this case, the normal singular meaning of a computer is reaffirmed repeatedly throughout the specification, so therefore, there shouldn't be any kind of blind adherence to this general rule of construction when the specification is so clear that only a single computer is talked about in terms of processing this invention. Now, there's other claims as well. Claim 58, the dependent claim asserted, talks about a single command entered into the computer. Claim 59, the other dependent claim asserted, talks about a command entered into the computer, and so every reference in the claim language itself is to a singular computer. The dictionary definitions, when they define computer, talk about a singular device, and so there's no consistency there. The several interconnected units argument that the appellant makes is talking about a case where the input and output devices might be several, like a keyboard connected with a wire, a monitor connected to the computer with a wire. That's the interconnected units that the dictionary definitions are talking about. There's absolutely no language whatsoever in this patent that talks about one computer communicating with another or two computers processing this invention whatsoever, and a computer network is defined as more than one computer with an interconnection through a communications channel, and there's no such discussion of that whatsoever in the specification. But I think another important factor is the claims repeatedly use the language at least one throughout the claims. There are 17 claims that use the language at least one, including Claim 26. Claim 26 uses the word at least one character is removed from what I said fields, and there are also four claims that use the word at least, and in the Norian case again, the court pointed to that language as indicating that where the patentee intended for more than one to apply, it used the word at least one, and that if it intended that concept to apply to, in that case, it was some kind of an acid, sodium phosphate, it would have said that. In fact, in Claim 26, they used the language at least one. There's no reason why if they intended this to apply to more than one computer, it would have said a process executed in at least one computer, but it didn't say that because it's not intended to cover that. The single computer program language in Claim 75 I think actually supports the district court. It talks about a single computer program in the computer. So it talks about one computer, but it points out that a single computer program could execute the various steps of the claim, but I don't think that indicates more than one computer is involved in that whatsoever. So I think it's clear that the court did not read any limitations into the claim language. The claim language alone, I think, supports the claim of the district court's construction. And then the general rule about comprising doesn't help them, and when you get to the specification, I think it's clear that the specification talks only about a single computer executing this invention, and I think also important is that in describing one computer performing this invention, the court talked about this invention, and they can set an in fact, the patenting used the phrase, this invention involves a single computer performing these steps, and it is the only embodiment in this specification. So this is not a case where a court latched onto an example or a mere preferred embodiment and then imported it into the claims. In this case, the patentee said clearly that my invention is performed in this manner and discussed only a single computer, and again, this court recently in the Honeywell versus ITT Industries case pointed to that language of this invention is very important in making it clear that the district court's construction was not reading a limitation from a preferred embodiment, and in fact said the public is entitled to take the patentee at his word, and the word was that the invention is a fuel filter. In that case, it said this invention is a fuel filter, and it pointed out that that's not a preferred embodiment, but the only embodiment, and that analysis is directly applicable in this case as well. The loaded-offloaded issue, if you look at the specification where it talks about that, it's talking about a removal of data from one computer or the importing of data into a computer. There's no discussion in that part of the specification about a communication going on between two computers, so that language doesn't bespeak of a process being performed in more than one computer at all. In fact, if there were a network involved where the two computers are more communicating, you wouldn't need to offload and load data, it would simply be communicated back and forth without removal and then uploading, so that language doesn't help at all. One thing that the appellants mentioned in their briefing was the prosecution history, and they claimed that some patents that were cited in the prosecution history mentioned networks, and therefore the use of the word network should be broad to include more than one computer. And if you read that prior art, it actually supports the district court. There is nothing in that prior art that indicates that persons of ordinary skill define the term computer to include more than one computer or a network. And in fact, the 294 patent cited uses the term a computer only in the singular sense and expressly distinguishes a process, in that case, used in a computer from a network of multiple computers. I believe the report said, it even said, it talked about in the, here it is, for network applications. Then it goes on to explain how the invention could be used in such applications, but it distinguished between a remote host computer and the central large computer. So that patent, I submit, actually supports our position that persons of ordinary skill in the single computer, and that when they want their invention to apply to a network, they say network, or at least they use multiple computers in their phraseology. And the other patents are similarly actually, they either don't mention the word computer or don't discuss it, or when they do distinguish between a centralized computer or multiple independent processors or computers in the plural, they never use the word computer to mean one or more in any of that prior art. So we believe that the intrinsic record, the extrinsic record, the claim language itself, and the law of outcomprising completely support the district court's construction of a computer as a single computer excluding a network. Now regarding the word lines, I want to make a few comments on that. The court correctly construed the term lines to mean horizontal lines, and there are several reasons for why that's the case. I mean, the word line is a common ordinary word that I don't think requires great expertise to understand, but even in the computer area, the computer dictionaries define a display line as a horizontal line. Now the appellant said that, well, the computer of the patent doesn't use the word display line. Well, it does. In fact, several times in the specification, the patent talks about the line being a display line. The specification uniformly discusses the term line or lines in the horizontal context and contrasts them with vertical columns, and the court relied on that in construing the word the way it is. Even Quickview doesn't even dispute that the specification describes a line in the horizontal context. The one argument that requires response here is they point to some claims that have the word horizontal line in it and other claims that just say line or lines and say, well, there must be a distinction. Well, I believe that that's not true. That's because if you look at the claims that use the word horizontal lines, they use the phrase horizontal lines and lines interchangeably and synonymously. In particular, claims 1 and 24 use both phrases interchangeably and claims 27 and 28, in fact, use both phrases in the preamble interchangeably. And so if you look at claims 1 and 24, which have the same type of language structure, and claims 27 and 28, you will see that the patent uses the words interchangeably. And so although one should ask the question, did the patentee intend something different? When you read the claim language in the court, the horizontal lines description is the only embodiment, again, of how lines are to be displayed. And so once again, this is not a case of grabbing an example or an exemplary embodiment and importing that limitation into the claims. And so unless the court has any further questions, I will give you back the rest of my time to the court. Thank you, Mr. Buescher. Mr. Buescher. I would just like to point out a few items and a few issues raised by Mr. Buescher and also by the court. I apologize if there's been any confusion regarding the appellant citation of claim 75, but it's our understanding that in claim in on page 21 of our opening brief, we did recite claim 75 as the execution of a single computer program in the computer. Yeah, but on page two and three of the reply brief, you say he recited quote a single computer, but when he intended to express broader coverage, he admitted the single limitation. That's just not an accurate quote. It says single computer program. Your honor, that was in the context of our argument that within the term computer, it did recite the term a single computer program. And I apologize for any confusion about that, but that was the point. It did not recite the specific exact language as in claim 26, because it recited a single computer program as opposed to just a single computer. But our position is that in the context of the term computer, when the patentee had an intent to limit a computer to a single computer, that he would include that language there. Other points, just a few other points raised during the response. The term computer does appear before the term comprising in the preamble, and it's our belief that since the term does come before, it actually supports our position in that a computer can include other types of an additional elements. And in fact, turning our attention to claim 26, it demonstrates that the computer may perform all of those steps. And so long as all of the steps in claim 26 are recited, then you have essentially a computer that satisfies the scope of claims. Further drawing attention to claim 26, the issue here is not whether there is intercommunication or whether there is a network between components of the computer as this is a method claim, but rather whether the steps are all performed by a single unitary device as opposed to a distributed system. And it's the quick view's position that because this is not an apparatus claim in which a computer has specific discrete components, rather this is a broader method claim in which the focus of the inquiry looks at the steps actually performed rather than the apparatus that actually performs the steps, that further supports our position that a computer can include a system in which its components may be distributed so long as it satisfies the limitations of the claims. Lastly, I would like to address actually two other items. I have two minutes left in my time. The issue regarding the conventional rule is A means at least one, and that's set forth very clearly in the KCJ case. And if there is to be a change to that conventional rule, this particular case is not the case to have that change because under KCG, the conventional rule applies so long as there is a clear, in all circumstances, it should apply unless there is a clear intent by the patentee. And we believe based on the intrinsic record parties have, the differences in the prior art cited by the patentee in which there are prior art references, at least five of them, that are cited in our brief. There are prior art references that do cite and use the term, use and describe a computer as including distributed systems in our belief, that that evidences that there is an intent by the patentee to include other types of computer systems. And lastly, with respect to the issue of lines, as we stated and we recognized in the briefs, there is a description of the preferred embodiment with respect to lines as opposed to columns, but we would also note that those descriptions are not in the summary intervention or in the background intervention section, but rather in the descriptions of the preferred embodiment and operation of preferred embodiment sections. And at the conclusion, actually, of column four, it states that it should be understood that other means of display other than the line-column relationship could be used, therefore suggesting that a broader understanding of lines as including both the horizontal and the columns would be encompassed. For these reasons that I believe my time is coming to an end, I quickly would ask that the claim construction orders from the district court be reversed and fermented for the proceedings. Thank you, Mr. Chan. Thank you. Thank you, Mr. Buzer. The case is submitted.